## Ex parte BUNJI UNE.

### No. 368–J.

District Court, S. D. California, S. D.
May 29, 1930.

W. H. Wylie and H. P. L. Beck, both of San Diego, Cal., for petitioner.

Samuel W. McNabb, U. S. Atty., and J. Geo. Ohannesian, Asst. U. S. Atty., both of Los Angeles, Cal., for respondent.

COSGRAVE, District Judge.

This matter comes before the court on a petition for a writ of habeas corpus in behalf of Bunji Une, a Japanese and native of Japan. The petition alleges that the petitioner is restrained of his liberty by Walter E. Carr, District Director of Immigration for the port of Los Angeles.

The grounds upon which the petition is based may be reduced to two: First, that the evidence shows conclusively that petitioner entered the United States prior to July 1, 1924, and, five years having elapsed before the warrant was issued, he is not subject to deportation; and, second, that he was not accorded a full and fair hearing.

It is admitted that petitioner is ineligible for naturalization as a citizen of the United States; that he entered the United States clandestinely, without passport or unexpired immigration visa. On December 21, 1929, while traveling through Old Town, San Diego, Cal., he was apprehended by John H. Van Treel, senior patrol inspector, taken to border patrol headquarters and questioned. He speaks very little English and was not examined through an interpreter. According to the report of inspector Van Treel, he stated that he had entered the United States in the year "Taisho 15," which, in the Christian calendar, is 1925. He was detained in the San Diego jail and, on December 23d, was examined by inspector Austin Spurlock through an interpreter. At this interview he denied saying that he had entered in "Taisho 15," and claimed that he came to the United States in June, 1923, entering from Mexico near the port of San Ysidro, Cal., without passport and without immigration visa. His arrest was ordered on December 27, 1929, by telegraphic warrant.

On January 2, 1930, a hearing was conducted by inspector Spurlock at San Diego where the petitioner was represented by counsel. At this hearing the petitioner repeated his claim that he arrived in the United States in June, 1923, and that he resided in the neighborhood of Riverside ever since. He claimed he contributed $5 to the Japanese earthquake sufferers in September of 1923 through the Japanese Association of Riverside and exhibited a receipt for the amount dated October 1, 1923, issued in his name and signed by the secretary of the Japanese Association. Other documents were exhibited

but of no convincing force, being undated. The petitioner claimed that he had come from Mazatlan to Ensenada on a boat in June, 1923. He could not remember the name of the boat, but believed it was a Mexican boat. He claimed to have lived in the Japanese colony in the neighborhood of Riverside and to have been employed there. He was not able to furnish any further evidence supporting his claim to residence in the United States for the time stated.

The case was then continued until the following day for the purpose of introducing further evidence as to his residence in Riverside. No further proceedings apparently were had until January 7th at which time, before Judson F. Shaw, another inspector, a statement of a Japanese witness was taken at San Bernardino; again, on January 8th, the statements of three Japanese, two being residents of Riverside and one of San Bernardino, were taken. One of these was further interrogated on January 13th.

The examination of the last four witnesses mentioned was conducted in the absence of both petitioner and his counsel and without notice to either. Each witness was shown what purported to be a photograph of the petitioner. One witness, the present secretary of the Japanese Association of Riverside, but not the secretary in 1923, stated that he knew a Bunji *Uneo* but not one named Bunji *Une*, and that the photograph was not that of Bunji Uneo. The same method of identification was pursued in the case of all four witnesses. One witness, Harada, a restaurant owner, stated, on his first examination, that he had seen the original of the photograph some seven or eight years ago in his restaurant in Riverside, but, in a second statement taken on a subsequent day, after thinking it over and talking with other Japanese, he concluded that he was mistaken and that the original of the photograph was not the same man.

The hearing before inspector Spurlock was resumed on January 16th and attended by the petitioner and his counsel, at which time the testimony of the four witnesses, who testified on January 7th, 8th and 13th, was introduced. Counsel for petitioner objected saying "at this time we desire to enter our objections to the whole proceedings in this case including the introduction of this evidence, but inasmuch as regulations provide that the grounds for the objections may not be stated at this time, we shall so state in our brief."

"Q. (Inspector Spurlock) Have you anything to say regarding this evidence? A. No.

"Q. Do you wish to make any remark concerning any of the Exhibits or any statements made at San Bernardino to Inspector Shaw and which have just been shown you? A. Nothing at all."

No affirmative evidence, other than the statement of petitioner on December 21st was introduced by the immigration officials respecting the date of the petitioner's entry into the United States. The inspector found that the petitioner was unlawfully in the United States in that he had entered without passport or immigration visa subsequent to July 1, 1924, and recommended deportation to Japan. On January 31st a hearing was had before the Board of Review in Washington and, on the recommendation of the Board, deportation was ordered by the Secretary of Commerce and Labor and warrant issued on February 5th.

As shown by the record, the damaging statement as to the date of petitioner's entry into the United States was made by him without the aid of an interpreter and at a time when he was not represented by counsel. The only independent affirmative evidence in the case seems to be the receipt in the possession of the petitioner, admittedly genuine, given by the Japanese Association and dated October 1, 1923. It was therefore of the utmost importance that every opportunity be extended to the petitioner to establish his identity as the person named in the receipt in question. This would have been determinative of the question here, for no power lies in the Secretary of Commerce and Labor to order a deportation after a period of five years from the date of entry. Act Feb. 5, 1917, § 19 (8 USCA § 155).

██ Admittedly the examination of four Japanese witnesses was had in the absence of both petitioner and his counsel and without notice to either. This is in violation of part 2, subdivision D of Rule 19, Immigration Rules of January 1, 1930, which requires that, when counsel is selected, he shall be permitted to be present during the conduct of the hearing. Furthermore, identification of petitioner was made by photograph. This, in the judgment of the court, is a questionable proceeding, open to uncertainties, and does not rise to the standard of due process of law to which petitioner, as well as all other inhabitants of the United States, is entitled, and the court is forced to the conclusion that the proceedings on which the order of

deportation is based were unfair within the meaning of the law governing them. U. S. v. Sibray (C. C.) 178 F. 150, 151; Maltez v. Nagle (C. C. A.) 27 F.(2d) 835.

The writ is therefore granted and the petitioner discharged.